**BFI MEDICAL WASTE SYSTEMS INC., BFI Medical Waste Systems of California, Inc. and Browning–Ferris Industries, Ltd., Plaintiffs,**

v.

**WHATCOM COUNTY, a Municipal Corporation of the State of Washington, and Safe Waste Management Now, Defendants.**

No. C89–1769W.

United States District Court,
W.D. Washington,
at Seattle.

Jan. 22, 1991.

James R. Moore, Kathryn L. Tucker, Perkins, Coie, Seattle, Wash., for plaintiffs.

Paul J. Kundtz, Loren Dunn, James E. Rogers, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for defendants.

## MEMORANDUM ORDER GRANTING SUMMARY JUDGMENT TO PLAINTIFFS

JOHN L. WEINBERG, United States Magistrate Judge.

### INTRODUCTION

Plaintiffs ask this court to hold that an ordinance of defendant Whatcom County, excluding from the county infectious medical wastes generated outside the county, violates the Commerce Clause of the U.S. Constitution.

482

The parties have consented to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

Earlier in this case, plaintiffs secured a preliminary injunction, deferring the effective date of the ordinance pending final judgment. Both sides have moved for summary judgment, with extensive briefing and oral arguments. Both agree there are no genuine issues of material fact, and the case turns on issues of law.

For the reasons set forth below, the court holds that the ordinance imposes an impermissible burden on interstate and foreign commerce, in violation of the Commerce Clause. The court therefore orders the entry of summary judgment for plaintiffs, and permanently enjoins enforcement of the ordinance.

## SUMMARY OF RELEVANT FACTS

Plaintiffs (collectively "BFI") are in the business of collecting, hauling and disposing of wastes of various kinds. BFI collects a significant quantity of medical wastes in the area of Vancouver, British Columbia, Canada. Disposal of such wastes presents special health and safety problems. Inadequate facilities exist in the Vancouver area for their safe and legal disposal. An appropriate facility for that purpose exists, however, relatively nearby, but across the international border. That facility is an incinerator at Ferndale, Washington, operated by Recomp of Washington, Inc., and known as the "TRC facility."

The TRC facility processes 100 tons of waste per day, of which 4 tons can be medical wastes. BFI has secured by contract the exclusive right to use that capacity for medical wastes. BFI therefore hauls medical wastes from Canada to the TRC facility for disposal. To the extent BFI does not use the full capacity of four tons, it "markets" the remaining capacity to others. As a result, the TRC facility processes medical wastes not only from Canada, but also some from Portland, Oregon and from some other Washington counties.

In 1989 a group of citizens organized defendant "Safe Waste Management Now." This group sponsored a citizen initiative which led to passage by the Whatcom County Council of Ordinance No. 89–61 ("the ordinance"). The key provision is in Section 2:

*Section 2. Restrictions on Importation of Out-of-County Generated Infections Medical Waste.* Effective January 1, 1990, infectious medical waste generated outside the territorial limits of Whatcom County shall not be accepted for disposal at a waste disposal facility within Whatcom county.

"Infectious medical waste" is defined by the ordinance to include "... all the infectious and noninfectious waste from all medical and intermediate care facilities, research centers, veterinary clinics, and other similar facilities...." Without limiting its general scope, the definition then provides examples of wastes which may be included.

Section 1 of the ordinance states it responds to the following problems:

(1) Accepting out-of-county wastes contributes to the capacity problem at the county's only landfill, at Cedarville.

(2) The waste disposal facilities in Whatcom County face major problems complying with federal regulations concerning the safe disposal and storage of waste.

(3) Affordable alternatives for disposal of infectious medical wastes exist within and should be the responsibility of the county, state or country where this waste is generated.

(4) The transportation of medical and hazardous waste, particularly over long distances, increases the risk of harmful exposure or accidents.

There have been several factual developments since the passage of the ordinance. First, the Cedarville landfill, which was the only one in the county, has reached capacity, and closed. Whatcom County's municipal wastes are now being shipped to Eastern Washington.

Second, there have been significant technical modifications at the TRC facility, improving the safety of its operation.

Finally, BFI is developing an autoclave facility in British Columbia. This facility had not yet secured all of its permits, and was therefore not open at the time of oral argument in this case. But when it opens, it will receive for disposal 80% of the medical wastes BFI now sends to the TRC facility. The other 20% will continue to go to the TRC facility, unless prevented by the ordinance. BFI will market any capacity it does not use itself for medical wastes at the TRC facility.

## ANALYSIS OF LEGAL ISSUES

### 1. *In General*

The "Commerce Clause" of the U.S. Constitution, Art. I, § 8, cl. 3, reserves to Congress the power, "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes; ...."

There is an abundance of judicial authority passing upon whether specific state or local legislation usurps this prerogative of Congress. The parties agree on the broad outlines of the analysis applicable to this case. The court must first determine whether the legislation is subject to a rule of virtual per se invalidity. If it is not, the court then must apply a more flexible, three-part inquiry.

> The opinions of the [Supreme] Court through the years have reflected an alertness to the evils of "economic isolation" and protectionism, while at the same time recognizing that incidental burdens on interstate commerce may be unavoidable when a State legislates to safeguard the health and safety of its people. Thus, where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected (citations omitted). The clearest example of such legislation is a law that overtly blocks the flow of interstate commerce at a State's borders (citation omitted). But where other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade, the Court has adopted a much more flexible approach, the general contours of which were outlined in *Pike*

*v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L Ed 2d 174, 90 SCt 844 [847].
*City of Philadelphia v. State of New Jersey*, 437 U.S. 617, 623-24, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).

This case turns upon the application of these rules to the Whatcom County ordinance.

### 2. *Rule of Virtual Per Se Invalidity*

The *City of Philadelphia* case is the most helpful in defining the rule of "virtual per se invalidity."

The State of New Jersey enacted legislation prohibiting the importation of most solid or liquid waste which originated or was collected outside the territorial limits of the state. This adversely affected several cities in New York and Pennsylvania, which were shipping their wastes into New Jersey. The City of Philadelphia challenged the legislation as a violation of the Commerce Clause.

As quoted above, the Court observed that a law which overtly blocks the flow of interstate commerce at a state's borders is the clearest example of legislation which effects simple economic protectionism; and which is therefore subject to a rule of virtual per se invalidity. The Court defined the crucial inquiry to be whether the New Jersey law was basically a protectionist measure, or whether it could fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental.

The parties to the case directed much of their argument to analyzing the legislature's purpose in enacting the law. The Supreme Court, however, found it unnecessary to resolve that issue:

> But whatever New Jersey's ultimate purpose, it cannot be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently. Both on its face and in its plain effect, ch. 363 [the New Jersey statute] violates this principle of nondiscrimination.

*City of Philadelphia, id.* at 626-27, 98 S.Ct. at 2537. The Court held the New

Jersey statute invalid, without reaching the more flexible test described in *Pike*.

■ The Whatcom County ordinance, like the New Jersey legislation, barred medical wastes solely on the basis of its origin. This court finds that *City of Philadelphia* is controlling authority in this case, and requires the invalidation of the ordinance.

Defendants correctly point out that there are substantial distinctions between this case and the facts in *City of Philadelphia.* But alone or together, they do not compel a different result.

It is true that the ordinance prohibits only medical wastes, as contrasted to the New Jersey legislation, which barred almost all wastes. Because medical wastes present greater health and safety hazards, defendants argue this proves the county acted for proper purposes. But this argument fails for the same reason as the similar argument by New Jersey. Whatever the county's purpose, the ordinance on its face and in effect discriminates solely on the basis of origin.

■ Defendants vigorously contend that a different result is mandated here because the ordinance erected a *county* border ban, as contrasted to the *state* border ban in *City of Philadelphia* and in many of the other cases cited by BFI. Defendants argue that this circuit held that a county border ban does not violate the Commerce Clause in *Evergreen Waste Systems, Inc. v. Metropolitan Service District,* 820 F.2d 1482 (9th Cir.1987). Furthermore, defendants contend, *Evergreen* is the only circuit authority on the validity of a county border ban.

There is no question that the resolution of this case requires a careful analysis of *Evergreen,* and its reconciliation with *City of Philadelphia* and other binding Commerce Clause decisions.

In *Evergreen,* a municipality of three Oregon counties in the Portland area operated a specific landfill site. That municipality by ordinance declined to accept at the landfill waste from any source outside the three county area. A waste disposal service in Washington challenged the limitation as a violation of the Commerce Clause. The court held that the *City of Philadelphia* rule of virtual per se invalidity did not apply, emphasizing two important factual distinctions from *City of Philadelphia:*

> Unlike New Jersey's total ban on out-of-state waste, Metro's ordinance applies to only one of Oregon's many landfills and bars waste from most Oregon counties as well as out-of-state waste.

*Evergreen,* at 1484. The court then went on to apply the more flexible *Pike* test, and found no Commerce Clause violation.

The Whatcom County ordinance reflects one but not both of these distinctions. It is like the *Evergreen* ordinance in that it erects a barrier around an area smaller than an entire state. Wastes from all other Washington counties are barred from Whatcom County, like wastes from other states and from Canada. But it is like the New Jersey legislation struck down in *City of Philadelphia,* in that it is a totally bans the importation of medical wastes into the county. It is not limited to a specific landfill or other facility.

The facts of this case therefore fall squarely between those in *City of Philadelphia* and in *Evergreen.* Both cases are binding authority; and this court must therefore determine on which side of the line this case falls.

There is a third distinction between *City of Philadelphia* and *Evergreen;* but under the circumstances, it is of only passing interest. Other Commerce Clause cases have established what has become known as the "market participant" exception. Where the state or local government is itself a participant in the economic market in question, the Commerce Clause does not apply. *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). This would appear to have been a rationale available to the court in *Evergreen,* where the municipality operated the landfill covered by its ordinance. BFI suggests that *Evergreen* should be distinguished on this basis; and at least one commentator has done so. Mank,

*Out–of–State Trash: Solid Waste and the Dormant Commerce Clause*, 38 J.Urb. & Contemp.L. 25, 26 (1990). But the opinion in *Evergreen* does not discuss or even hint at the market participant exception. As it was obviously not the basis for the court's decision, it cannot fairly be distinguished in that manner.

Defendant's argument that a *county* border ban does not violate the Commerce Clause is substantially weakened by *Dean Milk Co. v. Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951). In that case, the City of Madison, Wisconsin prohibited the sale within the city of milk as pasteurized unless it had been processed and bottled at an approved plant within five miles from the central square of the city. On a challenge by an Illinois milk processor, the Court held the ordinance violated the Commerce Clause. The Court squarely rejected the defense that the Madison ordinance banned Wisconsin milk from outside the Madison area in the same way as it banned out-of-state milk. *Id.* at 354, n. 4, 71 S.Ct. at 298, n. 4.

▮ In resolving which of the two principal authorities governs the decision in this case, this court concludes it must be guided by the intended and actual effect of the ordinance upon interstate and foreign commerce. The Commerce Clause is intended to protect Congress' prerogative to regulate in these areas. An ordinance which interferes with that prerogative, or is intended to do so, must give way to the supremacy of the U.S. Constitution; while an ordinance which has no such intention or effect is entitled to full operation.

The undisputed facts of this case establish that the Whatcom County ordinance would significantly affect interstate and foreign commerce, and could only have been intended to have that effect. Four tons of medical wastes are incinerated at the TRC facility each day; and the vast majority comes from Canada and Oregon. The ordinance would prohibit disposal of this entire mass of material. Even when BFI is able to dispose of much of the Canadian waste at its new facility in Canada, some will still be bound for the TRC facility. And much of the remaining capacity at TRC would be marketed, in all likelihood, for disposal of out-of-state wastes.

Nor is there any doubt that the ordinance was intended, *inter alia*, to have such an effect upon interstate and foreign commerce. As quoted above, section 1 of the ordinance, in stating its purposes, stated that disposal of these wastes, "... should be the responsibility of the county, state or country where this waste is generated."

The court therefore concludes that because the Whatcom County ordinance prohibits importation of medical wastes solely on the basis of its origin, it discriminates against interstate and foreign commerce, in violation of the Commerce Clause.

### 3. Balancing Test of Pike v. Bruce Church

▮ Even if the Whatcom County ordinance survived the test of "virtual per se invalidity," this court would be required to apply the more flexible balancing test described in *Pike*. For the reasons discussed briefly below, this court would be required to reach the same conclusion: that the ordinance violates the Commerce Clause.

▮ The first part of the *Pike* test is whether the ordinance regulates "evenhandedly," as between in-state and out-of-state parties. As discussed above, this ordinance does not, as it applies different rules to medical wastes based solely upon their origin.

Second, the court must determine whether the ordinance accomplishes a legitimate local public purpose. The ordinance partially meets this requirement. There can be no question that transporting medical wastes involves risks of accidents and exposure. Furthermore, the reduction of the total amount of medical wastes incinerated in the county reduces, to some extent, the risks of exposure and contamination at the incinerator itself. These are legitimate public purposes. To the extent the ordinance was at one time intended to preserve the county's landfill at Cedarville, it can no longer serve that purpose, as the landfill has been closed.

Next, the court must assess whether the ordinance has only an "incidental" effect upon interstate and foreign commerce. For the reasons discussed above, the court finds the ordinance would have a very substantial effect upon such commerce. Defendants suggest that the effect can be deemed "incidental," no matter how great, so long as it occurs in the process of achieving the legitimate public purposes. This strained reading of the *Pike* test is unpersuasive.

Finally, if legislation has passed all of these tests:

> ... it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike, id.*, 397 U.S. at 142, 90 S.Ct. at 847.

If the court were required to reach this balancing test, it would be required to find the ordinance fails to meet its requirements. If the court's objective is to provide safeguards during the transportation of medical wastes, it could address that problem directly. A border ban does not begin to address the same problem relating to the transportation of in-county medical wastes. The court notes that Ferndale is only slightly farther from the Canadian border than it is from Bellingham, the largest city in the county. Furthermore, the Canadian border is far closer to Ferndale than the vast majority of the county.

The county's concerns about conditions at the incinerator have been ameliorated by technical improvements in the operation. But to the extent those concerns remain, they can be addressed better by direct measures than by excluding out-of-county wastes while continuing to process in-county wastes.

In the words of the *Pike* test, the legitimate interests served by the ordinance could be promoted as well with a lesser impact on interstate activities.

### 4. *The "Quarantine Exception"*

■ Defendants also suggest the ordinance is protected from a Commerce Clause challenge by the "quarantine exception," such as that upheld in *Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986). But the quarantine exception has no more application in this case than it did in *City of Philadelphia.* By this ordinance, Whatcom County has not protected itself from the introduction of noxious, harmful articles which would otherwise not be present. The county has its own medical wastes, no different from the out-of-county wastes it would ban by this ordinance. The Supreme Court rejected the "quarantine exception" argument in *City of Philadelphia* for the same reason. 437 U.S. at 628–29, 98 S.Ct. at 2538.

### PREEMPTION OF ORDINANCE BY STATE LAW

In addition to its challenge under the Commerce Clause, BFI asserts that the ordinance is invalid because the subject matter it addresses is preempted by state law.

In view of the foregoing ruling on the Commerce Clause issue, the court does not reach the preemption issue.

### CONCLUSION

For the reasons set forth in this Memorandum Order, the court has also entered a separate "Order Granting Summary Judgment for Plaintiffs," declaring Ordinance 89–61 invalid and enjoining its enforcement.

### ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFFS

For the reasons set forth in this court's "Memorandum Order Granting Summary Judgment to Plaintiffs," this court DECLARES Whatcom County Ordinance 89–61, "An Ordinance Prohibiting the Importation of All Medical Waste Generated Outside the Territorial Limits of Whatcom County," violates the Commerce Clause of

the United States Constitution. This Court ORDERS that Summary Judgment be entered in plaintiffs' favor, granting declaratory relief and permanently enjoining enforcement of Ordinance 89–61.