[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DENYING MOTION TO REOPEN
The defendant Riley Energy Systems of Lisbon, Inc. (RESOL) has moved to open and set aside the judgment in these four cases rendered on February 16, 1994, which sustained the appeals of the plaintiffs and remanded the cases to the department of environmental protection (DEP) for further proceedings. In the brief filed with its motion RESOL claims that: (1) because of the ownership of the Lisbon plant by the Eastern Connecticut Resources Recovery Authority (ECRRA), presumably a municipal resource recovery authority created pursuant to General Statutes § 7-273aa, the discriminatory feature of permit condition 25, requiring displacement of out-of-state waste by Connecticut waste when available, does not violate the commerce clause, as the original decision concluded, but qualifies for the "market participant" exception thereto; (2) even if the barrier to the importation of out-of-state imposed by condition 25 is invalid, that provision should properly have been stricken, leaving the permit subject only to the remaining conditions; (3) the final decision must be affirmed whether or not the requirement of condition 25 for displacement of out-of-state waste by Connecticut waste may be invalid, because the substantial rights of the plaintiffs are not affected thereby; (4) all the parties are equitably estopped from taking advantage of any invalidity of condition 25, because of their failure to raise it in the administrative proceeding or on appeal; and (5) the entire statutory scheme making a determination of need based solely on the requirements for disposal of Connecticut waste a prerequisite for a solid waste facility permit violates the commerce clause. In its post-argument brief dated April 18, 1994, RESOL has presented the same claims in a slightly different format supported by a more elaborate discussion. It has also added another claim: (6) any remand order should limit the scope of further administrative proceedings in order to avoid relitigation of issues that were properly determined by the final decision reviewed on appeal. The court concludes that there is no merit in any of these contentions except the last, which is granted in part. The motion to open and set aside the judgment is denied.
 I
Several cases in recent years have applied the participant exception to allow a state or municipality to favor its own CT Page 5673 inhabitants over others in commercial transactions when the discriminatory restriction is confined to the proprietary activities of such governmental bodies and does not purport to regulate markets outside the scope of such activities. SeeHughes v. Alexandria Scrap Corp., 426 U.S. 794 (1976) (statute favoring Maryland auto scrappers over others with respect to payment of a state bonus for each Maryland registered car disposed of upheld). White v. Massachusetts Council ofConstruction Employees, 460 U.S. 204 (1983) (executive order of mayor establishing quotas for employment of Boston residents on construction contracts funded wholly or partly by city funds upheld); Reeves Inc. v. Stake, 447 U.S. 429 (1980) (refusal by state-owned cement plant to sell cement to out-of-state contractors during cement shortage until orders of South Dakota purchasers were filled upheld). A state cannot impose a discriminatory condition on a market in which it does not participate, however, because in such a situation it acts as a regulator. South Central Timber Dev. v. Winnicke,467 U.S. 82 (1984). (Restriction imposed on timber cut on state-owned land requiring that it be processed in Alaska before export invalidated because state did not engage in lumber processing).
By virtue of General Statutes § 7-233aa(e), ECCRA is a "public body politic and corporate of the state . . . and any such authority shall be a political subdivision of the state established and created for the performance of an essential public and governmental function." It is not a party to these appeals nor to the underlying administrative proceeding in which a permit was issued to RESOL. Although ECRRA holds title to the Lisbon plant, RESOL controls its operation pursuant to a twenty-five year "construction and service agreement" that requires a twenty-four hour notice before ECRRA may visit or inspect the facility. Under that agreement the relationship between the ECCRA and RESOL is quite similar to that of a lessor to a lessee. All operating decisions, such as those involving the importation of out-of-state waste, are to be made solely by RESOL without any right of participation by others. ECRRA is obligated to deliver acceptable waste in an amount equal to the capacity of the plant or otherwise to pay a service fee to RESOL. The court concludes that ECRRA is not a participant in the waste disposal market, because it has no right to control marketing decisions, which are wholly within the province of RESOL.
Even if ECRRA could be deemed a market participant in the garbage disposal business, condition 25 was not imposed by that CT Page 5674 body but emanated from another source, the department of environmental protection (DEP), which is plainly a regulator of, not a participant, in that business. In the cases in which the market participant exception has been found applicable, the restriction claimed to violate the commerce clause has been tied to the expenditure of funds or use of property wholly or partly furnished or controlled by the government entity that has imposed it. The basic rationale justifying the exception is that, when government acts as a proprietor engaged in a business enterprise, it should have the same freedom to choose those with whom it will deal that other proprietors enjoy. "State proprietary activities may be, and often are, burdened with the same restrictions imposed on private market participants. Evenhandedness suggests that when acting as proprietors, States should similarly share existing freedom from federal constraints, including the inherent limits of the Commerce Clause." Reeves, Inc. v. Stake,447 U.S. 429, 439 (1980). In the present case the author of the restriction involved is the DEP, which share no identity with ECRRA. Neither the DEP nor any other state agency will supply any of the funds used for construction of the Lisbon plant.
The court concludes, that in this instance, the DEP was acting as a regulator and not as a market participant in imposing the restriction upon out-of-state waste and that, accordingly, the market participant exception does not apply to save that permit condition from the prohibition of the commerce clause.
In its post-argument brief, RESOL maintains that Condition 25, despite its restriction on out-of-state waste, does not violate the commerce clause because it applies only to the Lisbon plant and does not have the practical effect of excluding such waste from the entire state or prevent it from being disposed of at other facilities within the state. It relies on two cases,Medical Waste Assoc. v. Mayor and City Council,966 F.2d 148 (4th Cir. 1992) and Evergreen Waste Systems v.Metro. Service Dist., 820 F.2d 1482 (9th Cir. 1987). In both cases, however, the restrictions involved did not explicitly ban out-of-state waste from being accepted at the disposal facility involved or create a preference for in-state waste. Those restrictions merely limited the use of a facility to specified in-state regions and would bar waste from other sources within the state as well as from other states. For this reason those restrictions were deemed not to be per se
violations of the commerce clause, such as a law "that blocks the flow of interstate commerce at a State's borders." City ofCT Page 5675Philadelphia v. New Jersey, 437 U.S. 617, 623-24 (1978) Condition 25 contains a discriminatory Provision expressly directed against out-of-state waste and, therefore, constitutes aper se violation of the commerce clause.
In any event, the two cases relied on by RESOL were implicitly overruled in Fort Gratiot Landfill v. Mich.Dept., 504 U.S. ___, 119 L.Ed.2d 139, 112 S.Ct. ___ (1992), which rejected the motion that the availability of other waste disposal facilities within a state for out-of-state waste and evenhanded treatment of in-state and out-of-state waste by a discriminatory restriction insulate it from the commerce clause. "In short, neither the fact that the Michigan statute Purports to regulate intercounty commerce in waste nor the fact that some Michigan counties accept out-of-state waste provides an adequate basis for distinguishing this case from Philadelphia v. NewJersey." Id.
 II
RESOL claims that, if condition 25 is invalid, the court should simply strike that condition, leaving the permit in effect subject to the remaining conditions. The original decision addresses such a disposition of the appeal but rejects it because of the impossibility of determining, without further proceedings, whether DEP would have issued the permit if it had realized that the condition was invalid. "The decision to issue the permit was inextricably intertwined with the final decision maker's assumption that the condition be imposed guaranteed that the waste from the HRRA towns would be disposed of at the Lisbon plant. On that basis he accepted the Wheelabrator contracts with the HRRA municipalities as sufficient compliance with the requirement of § 22a-208d(c)(1)(D) for contracts evidencing that those municipalities `will send waste to the facility.' His erroneous assumption may also have colored his determination of need. It is not possible for this court to decide whether the final decision maker would have deemed those contracts adequate or would have found a need for the Lisbon facility if he had realized that the condition he imposed was invalid." M/D pp. 38-39.
RESOL maintains that only the second sentence of condition 25, authorizing displacement of HRRA waste only be waste the Lisbon plant receives from other Connecticut towns, raises any question involving the commerce clause and assumes that no such CT Page 5676 concern exists with respect to the first sentence, requiring RESOL to dispose of all the waste it receives from the HRRA towns. This condition does not purport to bind HRRA or any of those towns, which were not parties to the proceedings. It does bind RESOL and, implicitly, its parent corporation, Wheelabrator Environmental Systems, Inc. (Wheelabrator), which is a party to the HRRA contracts and is obliged thereunder to dispose of all the waste delivered by the towns to its transfer station in the Danbury area. Literally, the second sentence does not impose any requirement that waste from the HRRA towns be delivered to the Lisbon plant, because it provides only that RESOL "shall dispose of all solid waste which it receives from [such] towns at the facility." (Emphasis added) A promise to deliver the HRRA waste to Lisbon, however, was contained in a letter from Wheelabrator to DEP. Although performance of this promise was not made a permit condition, it may be enforceable as a representation on which DEP relied in issuing the permit in view of the affiliation of RESOL with Wheelabrator.
If the first sentence of condition 25 is read to restrain the shipment of HRRA waste to out-of-state facilities, including those controlled by Wheelabrator, as the DEP probably intended, it also would violate the commerce clause. That provision of our federal constitution has been applied to invalidate prohibitions on the export of in-state waste to other states. "Regulations which restrict transportation of waste out of a state also are subject to the limitation of the Commerce Clause." WasteSystems Corp. v. County of Mart, Minn., 985 F.2d 1381, 1386
(8th Cir. 1993); see Hughes v. Oklahoma, 441 U.S. 322,336-37 (1979). Both sentences of condition 25, therefore, violate the commerce clause and are invalid.
The invalidity of condition 25 does not preclude the issuance of a permit for the Lisbon plant by DEP, but it does raise the question whether the permit would have been issued if the final decision maker had realized that condition 25 in its entirety was unenforceable and that the protection it afforded against incinerating out-of-state waste at the Lisbon plant was illusory. Would DEP have accepted the HRRA contracts as sufficient compliance with the requirement of General Statutes § 22a-208d
(c)(1)(D)(i) for "contracts or letters of intent" to evidence the quantity of waste the HRRA towns would send to Lisbon if it were aware that the condition intended to insure delivery of such waste to Lisbon was not enforceable? Would DEP have made the same determination of need if it had known that the CT Page 5677 requirement imposed for displacement of out-of-state waste by available Connecticut waste would be invalidated? These are fact-bound questions that can be resolved only by further agency proceedings. This court cannot decide them as a matter of law and, therefore, must remand the case to DEP for further proceedings, as General Statutes § 4-183 (j) provides.
 III
RESOL argues that, even if condition 25 is invalid, it does not impair the substantial rights of any of the plaintiffs, whose interests will not be affected whether that condition of the final decision is retained or stricken. Section 4-183 provides that "[T]he court shall affirm the decision of the agency unless the court finds that the substantial rights of the person appealing had been prejudiced because the administrative . . . decisions are . . . in violation of constitutional . . . provisions." This provision makes the doctrine of harmless error applicable to administrative appeals.
The court is not aware of anything in the record to indicate that any of the plaintiffs will suffer more adverse consequences from issuance of a permit subject to condition 25 than without it. If the permit would not have been granted by the final decision maker with the realization that the assurance condition 25 was intended to provide, concerning the disposition of waste from the HRRA towns at Lisbon and its displacement only by Connecticut waste, was illusory, then the "substantial rights of the plaintiffs were harmed by inclusion of the condition. Their substantial rights include protection of the environment and, with respect to CRRA and SCRRA protection from competition by a source of pollution operating under a permit that might not have been granted except for a misconception of the law by DEP.
 IV
RESOL claims that all of the parties to the appeal are barred from challenging the validity of condition 25 under the principles of waiver or estoppel, and that the possibility of a challenge by other persons is too remote and too speculative to be of serious concern.
RESOL maintains that the plaintiffs have waived any objections to condition 25 by their failure to raise the issue of its invalidity on appeal. A court is not necessarily limited in CT Page 5678 its disposition of a case, however, to claims explicitly raised by the parties. Greenwood v. Greenwood, 191 Conn. 309,315 (1985). In the argument of this motion to reopen and set aside the judgment, all the parties have had an opportunity to be heard on the commerce clause issue RESOL has suffered no prejudice from the plaintiffs' oversight.
RESOL relies on several cases in which the reviewing court refused to consider an issue raised for the first time on appeal that could have been raised during the administrative proceeding. Those cases are inapplicable, however, because there was no need to attack the validity of condition 25 until the final decision was rendered including that provision. During the administrative proceeding CRRA did cite the authorities which the original decision of this court has found persuasive with respect to the unconstitutionality of condition 25 and pointed out, in reference to the HRRA contracts, that "[i]n the absence of a contract that specifically requires the waste to be delivered to a specific facility, the eventually built capacity will be open." T. 7/9/92, pp. 35-36. There is no basis for claiming waiver on the part of the plaintiffs, because the defendants have not been prejudiced by the failure to articulate in their appeals the specific flaw found by the court in the final decision.
With respect to the estoppel claim against the plaintiffs, RESOL fails to identify any conduct on their part that could have misled it or the final decision maker or that has prejudiced the defendants. Although RESOL may be estopped from attacking condition 25 by virtue of its acceptance of it during the administrative proceeding, the court is not aware that inequitable conduct of any of the plaintiffs induced the final decision maker to impose that permit condition.
Even if all the parties to the proceeding were estopped from challenging condition 25, any other person who can demonstrate that the condition has an adverse effect upon his interests would be entitled to do so. A waste processor or trucker engaged in the waste disposal business who handles out-of-state waste might well be sufficiently aggrieved to bring an action contesting the validity of the restrictions imposed by the condition. SeeWaste Systems Corp. v. County of Martin, Minn., supra, (waste processor challenging ordinance requiring that all waste generated within two counties be delivered to a waste disposal facility created by the two counties; Chemical WasteManagement v. Hunt, supra (waste processor of both in-state CT Page 5679 and out-of-state waste challenging Alabama statute imposing a fee for disposal of hazardous waste from other states but not on such waste generated within the state); Fort Gratiot Landfill v.Michigan Dept., supra (waste processor challenging Michigan statute having disposal of solid waste not generated within the county where disposal area is located).
The court concludes that the possibility of a challenge to Condition 25 is neither remote nor speculative.
 V
RESOL claims that before ordering a remand, this court must address the effect of the commerce clause on the statutory licensing scheme, which is designed to restrict waste disposal capacity in Connecticut to an amount that will not exceed the capacity "needed to process waste generated in the state." General Statutes § 22a-208d(c)(1)(I).
"Appropriate deference to a coordinate branch of government exercising its essential functions demands that we refrain from deciding constitutional challenges to its enactments until the need to do so is plainly evident." State v. Madera,198 Conn. 92, 105 (1985). There is no such necessity in this case, because, upon remand, the DEP may decide to issue the permit without the conditions that offend the commerce clause. RESOL could hardly be aggrieved by such an outcome. The court, therefore, declines the invitation extended by RESOL to embark upon a discussion of the constitutional claim it raises.
 VI
RESOL's final claim is that the judgment should define more precisely the scope of the "further proceedings" for which the remand has been ordered. The court concludes that some clarification will be helpful but declines to limit the scope of the remand proceeding so narrowly as RESOL demands.
In the original decision the court concluded that the case should be remanded to DEP for further proceedings, as General Statutes § 4-182(j) provides, rather than modify the agency decision, as permitted by § 4-182(k) when "a particular agency action is required by law." A modification of the agency decision is not possible, because it cannot be determined as a matter of law whether DEP would have granted a permit for the CT Page 5680 Lisbon facility if it had realized that Condition 25 was invalid, rendering the HRRA contracts relied upon as sufficient evidence of the quantity of waste available to that plant, unenforceable.
The purpose of the remand is (1) to determine whether DEP, as the fact-finding agency, would have issued the permit despite the infirmities in the HRRA contracts, which Condition 25 was intended to cure; and (2) to determine whether the prediction that a shortage of waste disposal capacity in this state, amounting to 400 tpd., will occur by 1998, which is the basis for the DEP finding of a need for the Lisbon plant, warrants issuance of the permit at this time, given the existence of alternatives and the invalidity of the restriction imposed by condition 25 on out-of-state waste. The critical question is whether DEP would have issued the permit without the restrictions imposed by Condition 15.
For the purpose of the remand, the further proceedings should be limited to the present evidentiary record. Those issues definitively resolved by the original decision of this court should not be relitigated. If DEP should decide to exercise its authority under § 4-180a(b) to consider a reversal or modification of its final decision "on a showing of changed conditions", the proceedings for that purpose should be conducted separately from the remand proceedings.
It is ordered that RESOL's motion to open and set aside the judgment be denied.
David M. Shea State Judge Referee