39 F.3d 1179
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul W. URBANEK; Karen Urbanek, Claimants-Appellants,
and
90 ACRES OF LAND, more or less, situated on State Route
Number 646, approximately 1 1/2 miles north of McGaheysville
in Rockingham County, Virginia, and any and all proceeds
from the sale thereof (Paul W. Urbanek), Defendant.
 No. 93-2309.
 United States Court of Appeals, Fourth Circuit.
 Submitted August 23, 1994.
Decided October 28, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. B. Waugh Crigler, Magistrate Judge. (CA-89-23-H)
 Sa'ad El-Amin, El-Amin & Crawford, P.C., Richmond, VA, for Appellants.
 Kenneth M. Sorenson, Asst. U.S. Atty., Roanoke, VA, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal seeks to overturn a decree of forfeiture. The prior owners of the forfeited property, Paul and Karen Urbanek, claimed that a plea agreement between Paul and the United States included a provision that the United States would not seek forfeiture of the property at issue. The district court determined that the plea agreement never contained such a provision, entered summary judgment in favor of the United States, and ordered forfeiture. Finding no error, we affirm.
 
 I.
 
 2
 Paul and Karen Urbanek were indicted on October 3, 1988, on cocaine conspiracy charges. Additionally, Paul was charged with three counts of distribution of cocaine. Trial was scheduled for February 21, 1989.
 
 
 3
 On the morning of trial, the Government and Paul reached a plea agreement. He agreed to enter an Alford plea, see North Carolina v. Alford, 400 U.S. 25 (1970), to one distribution count and to plead guilty to the remaining counts. Because of a lack of clerical staff, the plea agreement was not reduced to writing. However, the transcript of the plea proceeding reveals that Paul was questioned about the terms of the agreement.
 
 
 4
 The district court asked Paul whether the terms of the plea agreement were other than as reflected on the record (three guilty pleas; one Alford plea). Defense counsel responded, "[t]he Alford plea and treatment of his wife, Your Honor." The reference was to the Government's decision to enter into a diversion agreement with Karen Urbanek. The Government's attorney added that the United States had no objection to Paul's remaining free on bail pending sentencing. The court then continued to assure itself about the terms of the plea agreement:
 
 
 5
 THE COURT: Correct. Certainly, that can be worked out easily enough. Well, the court is aware of the substance of the plea agreement, and I take it that Mr. Mika [defense counsel] and Mr. Alderman [the United States Attorney] both are in agreement as to the substance as the court has stated it plus amplification by Mr. Alderman; is that correct?
 
 
 6
 MR. MIKA: That's correct, Your Honor.
 
 
 7
 MR. ALDERMAN: Yes, Your Honor.
 
 
 8
 THE COURT: Well, now, Mr. Urbanek, has anyone made any promise other than those embraced in the plea arrangements that induced you to plead guilty?
 
 
 9
 THE DEFENDANT: No, sir.
 
 
 10
 THE COURT: Well, now, do you understand that if your counsel or the Government come in and recommend a particular sentence that if I decline to impose that recommended sentence and impose a more severe sentence that you will not therefore be entitled to withdraw your guilty plea?
 
 
 11
 THE DEFENDANT: Yes, sir.
 
 
 12
 THE COURT: The court will accept the plea agreement as it has been outlined. It seems appropriate in this case. Now, Mr. Urbanek, has anyone made any prediction or prophesy or promise to you as to what your sentence will be?
 
 
 13
 THE DEFENDANT: No.
 
 
 14
 On March 13, 1989, roughly three weeks after the Rule 11 proceeding, the Government filed two complaints for forfeiture in rem of various parcels of real estate. The complaints alleged that the property was subject to forfeiture because it had been used or was intended to be used to commit or to facilitate the commission of a violation of the Controlled Substances Act. See 21 U.S.C.A. Sec. 881(a) (1981 & West Supp.1993).
 
 
 15
 Years of legal maneuvering over the requested forfeiture ensued. Neither original defense counsel nor an attorney who subsequently represented the Urbaneks contended in any of the many documents that were filed that the forfeiture action violated the terms of Paul's plea agreement. In November 1992, the second attorney was replaced. The Urbaneks received leave to file a formal answer to the forfeiture complaints.
 
 
 16
 On January 22, 1993, they filed that answer. The Urbaneks alleged that they were denied equal protection and due process because the Government did not file forfeiture actions against similarly situated individuals. Additionally, the Urbaneks claimed for the first time that the plea agreement encompassed a provision that the Government would not seek forfeiture of their property.
 
 
 17
 The United States moved for summary judgment. In support of their opposition to that motion, the Urbaneks filed their own affidavits and that of original defense counsel Mika. Paul and Karen recited that Paul's guilty plea was entered in exchange for Karen's lenient treatment, for Paul's remaining on bond pending sentencing, and Karen's keeping their property. Both Paul and Karen stated that the court ordered stricken from the record Paul's alleged statement that the Government had agreed that Karen could keep the property. Further, Paul stated that when he answered, "No," to the court's question about any other promises being made, he assumed that the reference to the treatment of his wife included the agreement that she would keep the property.
 
 
 18
 In his affidavit, Mika stated that during plea negotiations Paul made clear that he was entering his pleas so that Karen would not be incarcerated and would be able to keep the property. Mika did not state that the court ordered any testimony stricken from the record, nor did he state that Paul told the judge that he was pleading guilty in part so that there would be no forfeiture. Rather, Mika stated that Paul "told the Judge ... that he was pleading guilty so that his wife would not be convicted of anything."
 
 
 19
 The former United States Attorney also filed an affidavit. His recollection was that a few weeks prior to trial, his office realized, based on recent case law, that the property was forfeitable. He distinctly remembered informing Mika that the plea did not preclude later civil forfeiture proceedings. Further, when the forfeiture proceedings were filed several weeks later, neither the Urbaneks nor Mika complained that those proceedings violated the plea agreement or other assurances made on February 21, 1989.
 
 
 20
 Following a hearing on the summary judgment motions, the district court granted the Government's motion for summary judgment and ordered forfeiture of two tracts of land. A third parcel of land had been subject to forfeiture; however, prior to the hearing, the Government moved to voluntarily dismiss that parcel. Summary judgment as to that parcel therefore was denied as moot. The Decree of Forfeiture was entered, and this appeal followed.
 
 II.
 
 21
 We review the award of summary judgment de novo. Medical Waste Assocs. v. Mayor and City Council of Baltimore, 966 F.2d 148, 150 (4th Cir.1992). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In summary judgment proceedings, the moving party must first demonstrate the absence of a genuine issue of material fact. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3578 (U.S.1992).
 
 
 22
 Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial. Richmond, F. & P. R.R. v. United States, 945 F.2d 765, 768 (4th Cir.1991), cert. denied, 60 U.S.L.W. 3716 (U.S.1992). All evidence must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The nonmoving party need not come forward with evidence that would be admissible at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 23
 However, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987). If the evidence favoring the nonmoving party is "merely colorable ... or is not significantly probative, ... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. Further:
 
 
 24
 [t]he mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict.
 
 
 25
 Id. at 252.
 
 
 26
 To overcome a properly supported summary judgment motion, the nonmoving party must, then, present " 'significant probative evidence tending to support' " his position. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) ( quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). "[I]f the factual context renders [the nonmoving party's] claim implausible--if the claim ... simply makes no sense--[the nonmoving party] must come forward with more persuasive evidence to support the claim." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 27
 In making a ruling, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254. This case essentially presents a claim that the terms of the plea agreement were other than what appears in the transcript of the Rule 11 proceeding. The evidentiary burden borne by a claimant seeking to overcome his representations at such a proceeding is an onerous one:
 
 
 28
 Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that are wholly incredible.
 
 
 29
 Blackledge v. Allison, 431 U.S. 63, 74 (1977).
 
 
 30
 At his Rule 11 proceeding, Paul stated that there were no agreements other than those mentioned in open court. He, his attorney, and the United States attorney all said that he was pleading guilty to three counts and entering an Alford plea to a fourth count. He stated that he was pleading guilty in return for the treatment of his wife and for his remaining free on bail pending sentencing. The Urbaneks' self-serving claim that an agreement not to seek forfeiture was mentioned but ordered stricken from the record is implausible. Such a claim is notably absent from Mika's affidavit.
 
 
 31
 Paul's claim that he thought the reference to "the treatment of his wife" included the purported agreement not to seek forfeiture is equally implausible. It is patently inconceivable that a defendant who believes his plea agreement to have been breached would neglect to mention the alleged breach for almost four years. Again, this claim is unsupported by anything other than the Urbaneks' own affidavits. We note, for instance, that Mika did not state in his affidavit that an agreement to seek forfeiture was part of the plea agreement.
 
 
 32
 Under Blackledge and the summary judgment case law, the Urbaneks did not meet their burden of overcoming Paul's declarations in open court about the terms of his plea agreement. Given the failure to present significantly probative evidence, beyond their own affidavits, that would warrant a finding that the plea agreement was breached, it is clear that summary judgment in this case was entirely appropriate. The self-serving, unsupported, and implausible affidavits simply were insufficient to overcome the Government's summary judgment motion. See Anderson v. Liberty Lobby, 477 U.S. at 249-50; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587.
 
 III.
 
 33
 We accordingly affirm the district court's judgment.* As our review of the materials before us reveals that it would not significantly aid the decisional process, we dispense with oral argument.
 
 AFFIRMED
 
 
 *
 Appellants also claimed on appeal that the district court erroneously included a tract of land, identified as the "Green House Property," as forfeitable property. However, as the Government correctly points out in its brief, the United States moved to voluntarily dismiss that parcel. The motion was granted, and the forfeiture order specifically excluded the Green House Property from forfeiture. The claim accordingly is moot